**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**AMBER H.,**

                              **Plaintiff,**

**v.**                                                   **6:22-CV-0313**

**COMMISSIONER OF SOCIAL SECURITY,**

                              **Defendant.**

_____

**THOMAS J. MCAVOY**
**Senior United States District Court Judge:**

### DECISION and ORDER

Plaintiff Amber H. ("plaintiff" or "claimant") brings this action pursuant to the Social

Security Act, 42 U.S.C. § 405(g), for review of a final determination by the Commissioner of

Social Security ("Commissioner" or "Defendant") denying her application for Social Security

Income ("SSI").  (Dkt. No. 1).  Plaintiff alleges that the Administrative Law Judge's ("ALJ")

decision denying her application for benefits was not supported by substantial evidence and

contrary to the applicable legal standards.  (Dkt. No. 10).  Pursuant to Northern District of New

York General Order No. 8, the Court proceeds as if both parties had accompanied their briefs

with a motion for judgment on the pleadings.

## I.    PROCEDURAL HISTORY

On July 24, 2017, Plaintiff filed an application for SSI benefits, alleging disability

beginning on April 6, 2012.  Administrative Record ("R") at 10.  Her application was initially

denied, and she requested a hearing.  R. 10, 110–21, 129–30.  Following an online video hearing

held on December 31, 2020, Administrative Law Judge ("ALJ") Lawrence Levey issued an

1

unfavorable decision on March 5, 2021.  R. 7–30.  On March 18, 2022, the Appeals Council

denied review of the decision, (R. 1–4), making the ALJ's decision the final determination of the

Commissioner.  This action followed.

## II.    LEGAL STANDARDS

### A.    Standard of Review

"District courts review a Commissioner's final decision pursuant to 42 U.S.C §§ 405(g)

and 1383(c)(3), and 'may only set aside a determination by the Commissioner if it is based on

legal error or not supported by substantial evidence in the record.'"  *Hill v. Comm'r of Soc.*

*Sec.*, 19-CV-5096, 2020 WL 5768726, at *5 (S.D.N.Y. Sept. 28, 2020) (quoting *Cole v. Colvin*,

12-CV-8597, 2014 WL 1224568, at "*2 (S.D.N.Y. Mar. 24, 2014)).  "Accordingly, [a court]

must 'conduct a plenary review of the administrative record to determine if there is substantial

evidence, considering the record as a whole, to support the Commissioner's decision and if the

correct legal standards have been applied.'"  *Rucker v. Kijakazi*, 48 F.4th 86, 91 (2d Cir. 2022)

(quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)).  A court "will overturn a SSA

decision only if the ALJ applies an incorrect legal standard, or if the ALJ's ruling is not

supported by substantial evidence."  *Id.* (citation omitted).  "The substantial evidence standard

is 'not high.'"  *Id.* (quoting *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (quotation

marks omitted)).  "It is 'such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'"  *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008)

(quotation marks omitted)).  Properly applied, this standard is highly deferential to the presiding

ALJ, "who has seen the hearing up close."  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1157 (2019).

"[O]nce an ALJ finds facts, [the Court] can reject those facts 'only if a reasonable

factfinder would *have to conclude otherwise*.'"  *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d

443, 448 (2d Cir. 2012) (emphasis in original).  The Court must not re-weigh evidence, assess

the reliability of witnesses, or otherwise substitute its judgment for that of the ALJ.  *Veino v.*

*Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).

Where the record supports disparate findings and provides adequate support for both the

Plaintiff's and the Commissioner's positions, a reviewing court must accept the ALJ's factual

determinations.  *See Quinones v. Chater*, 117 F.3d 29, 36 (2d Cir. 1997) (citing *Schauer v.*

*Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)); *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir.

1990).  "However, this 'deferential standard of review for substantial evidence does not apply

to the Commissioner's conclusions of law.'"  *Kenneth H. v. Comm'r of Soc. Sec.*, 21-CV-324,

2022 WL 2954364, at *3 (N.D.N.Y. July 26, 2022) (quoting *Byam v. Barnhart*, 336 F.3d 172,

179 (2d Cir. 2003)).  "Thus, 'where there is a reasonable basis for doubting whether the

Commissioner applied the appropriate legal standards,' the decision should not be affirmed."

*Id.* (citing *Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987)).  "This is so regardless of

whether or not the decision is otherwise supported by 'substantial evidence.'"  *Id.* (citing

*Johnson*, 817 F.2d at 986).  Although the reviewing court must give deference to the

Commissioner's decision, a reviewing court must bear in mind that the Act is ultimately "'a

remedial statute which must be 'liberally applied;' its intent is inclusion rather than exclusion.'"

*Vargas v. Sullivan*, 898 F.2d 293, 296 (2d Cir. 1990) (quoting *Rivera v. Schweiker*, 717 F.2d

719, 723 (2d Cir. 1983)).

### B.    Determination of Disability

To obtain disability benefits, the claimant must prove that she cannot "engage in any

substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to

last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1). The

Commissioner evaluates disability claims using the five-step sequential process set forth at 20

C.F.R. § 404.1520(a)(4). The claimant has the burden of proof at steps one through four, which

includes establishing her residual functional capacity ("RFC"). *Poupore v. Astrue*, 566 F.3d

303, 306 (2d Cir. 2009).

A plaintiff's RFC is defined as "what an individual can still do despite his or her

limitations.... Ordinarily, RFC is the individual's maximum remaining ability to do sustained

work activities in an ordinary work setting on a regular and continuing basis[.]" *Pardee v.

Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (quoting *Melville v. Apfel*, 198 F.3d 45, 52

(2d Cir. 1999) (citation omitted)). "In making a residual functional capacity determination, the

ALJ must consider a claimant's physical abilities, mental abilities, [and] symptomology,

including pain and other limitations which could interfere with work activities on a regular and

continuing basis." *Id.* (citing 20 C.F.R. § 404.1545(a)). If the claimant reaches step five, the

Commissioner must produce evidence that the claimant could perform a significant number of

jobs given her age, education, work experience, and RFC. *Id.* Generally, the Commissioner can

rely on vocational expert testimony for that purpose. *Biestek*, 139 S. Ct. at 1152.

## III.    FACTUAL BACKGROUND

Plaintiff was born on October 25, 1985 and has an eighth-grade education. R. 340, 346.

In July 2017, Plaintiff was released from prison, having served five years for assault. R. 551. In

August 2017, she was diagnosed with Persistent Depressive Disorder, an Unspecified

Neurodevelopmental Disorder, and Schizoaffective Disorder (Depressive Type). R. 508.

In September 2017, Plaintiff was seen for a diagnostic evaluation at Upstate Cerebral

Palsy. R. 514. She reported a history of anxiety, depression, and mood swings. R. 514. She

stated that she had been without medication since August 27, 2017, and "since then she is not doing good, having more racing thoughts and easily become irritable around people and easily becomes verbally aggression."  R. 514.  She also reported a history of auditory and visual hallucinations, which the examiner found were "not credible because she is not sure that the voices are [or] could be her own thoughts."  R. 514.  On examination, Plaintiff's mood was noted as dysphoric; her thought process was coherent and logical; her thought content was reality-based; her cognitive functioning, attention, and concentration were good; her insight and judgment were fair; she was calm and cooperative; she was alerted and oriented; there was no evidence of looseness of association or flight of ideas; and she was not expressing any passive delusions or paranoid thoughts.  R. 515–16.  Plaintiff's diagnoses remained as stated above.  R. 516.  The examiner prescribed a mood stabilizer and several other medications.  R. 516.

In April 2018, Plaintiff returned to Upstate Cerebral Palsy for medication management.  R. 553.  Plaintiff reported that she had been doing good.  R. 553.  She reported that she did not have mood swings and denied depression.  R. 553.  She had been sleeping well.  R. 553.  She was alerted and oriented, with good insight and judgment.  R. 553.  The examiner continued Plaintiff on her mood stabilizer.  R. 554.  In January 2019, Plaintiff was discharged from treatment at Upstate Cerebral Palsy due to lack of engagement—she had not returned for treatment since April 2018.  R. 543–44.

In July 2020, Plaintiff returned to Upstate Cerebral Palsy and reported poor sleep, mood swings, anxiety, and auditory hallucinations.  R. 1134.  On examination, Plaintiff was cooperative and polite, and her thought content was logical.  R. 1135.  Her diagnosis was listed as other schizoaffective disorder.  R. 1135.  In August 2020, Plaintiff reported that she was feeling increasingly stressed, anxious, depressed, easily irritable, and agitated.  R. 1125.  She

also reported mood swings, seeing things, hearing voices, and she was fearful of public transportation, being outside of her home, and dealing with the community.  R. 1125.  Plaintiff also stated, "I am feeling pretty good at this time, no complaints, just need my medication refilled."  R. 1126.  On examination, her thought process and content were normal, and her insight, judgment, and memory were good.  R. 1126.  She reported doing well on current medications.  R. 1126.  The examiner noted that Plaintiff's "history and presentation clearly suggest . . . anxiety disorder and possibly adjustment disorder."  R. 1126.  Plaintiff was encouraged to continue individual therapy, maintain medication compliance, and follow up with medical management.  R. 1126.

In November 2020, Plaintiff returned and reported being stressed, depressed, overwhelmed, having difficulty sleeping, and hearing voices.  R. 1112.  Plaintiff said that she was not doing well and wanted to get back on the mental health medication she was prescribed while incarcerated.  R. 1112.  She said that she did very well on those medications.  R. 1112.  Plaintiff was prescribed new medications.  R. 1112.  In December 2020, Plaintiff reported that she was doing okay but having family issues.  R. 1109.  Plaintiff said that she was sleeping better and taking her medication.  R. 1110.  On examination, her thought process and content were normal, and her insight, judgment, and memory were good.  R. 1110.  She was advised to continue taking her medications.  R. 1110.

At the hearing on December 31, 2020, Plaintiff testified that she has anxiety, doesn't like to be around other people, and has difficulty sleeping.  R. 83.  Plaintiff testified that she has difficulty doing household chores or going out in public.  R. 84, 91.  Plaintiff testified that she sometimes hallucinates and sees things which are not there.  R. 89–90.  Plaintiff said that she takes several medications for her mental health.  R. 93–94.  In addition to her mental

impairments, Plaintiff has been diagnosed with sacroiliac joint arthritis, sickle cell trait, asthma, chronic obstructive pulmonary disease, and obesity.  R. 13.

## IV.     THE ALJ's DECISION

The ALJ engaged in the five-step analysis required by 20 C.F.R. § 416.920(a) to determine whether Plaintiff qualified for disability benefits.  The ALJ found that Plaintiff had not engaged in substantial gainful activity since July 24, 2017, the application date.  R. 12.  The ALJ found that Plaintiff had the following severe impairments: 1) sacroiliac joint arthritis; 2) sickle cell trait; 3) asthma; 4) chronic obstructive pulmonary disease; 5) obesity; 6) anxiety disorder; 7) schizoaffective disorder; 8) depressive disorder; 9) neurodevelopmental disorder; 10) post-traumatic stress disorder; and 11) substance abuse (in remission).  R. 13 (citing 20 C.F.R. § 416.920(c)).

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. 404 Part 404, Subpart P, Appendix 1.  R. 13 (citing 20 C.F.R. §§ 416.920(d), 416.925, and 416.926).  Next, the ALJ found that Plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 416.967(c), with the following restrictions:

> [C]laimant can frequently stoop and crouch and can occasionally climb, balance, kneel, and crawl.  The claimant must avoid concentrated exposure to environmental irritants.  She can perform simple, routine, and repetitive tasks in an environment free of fast-paced production requirements, involving simple work-related decisions and few if any changes in the workplace.  The claimant cannot have required interpersonal interaction with the general public and can have occasional interaction with coworkers and supervisors.

R. 15–16.  The ALJ found that Plaintiff had no past relevant work.  R. 20.  The ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform.  R. 21.  Thus, the ALJ concluded that Plaintiff was not under a disability during the relevant period.  R. 23.

## V.    DISCUSSION

### A.    The Parties' Arguments

On appeal, Plaintiff argues that the ALJ committed three errors in denying her

application for benefits: 1) the ALJ "did not sustain their burden of demonstrating that there are

a significant number of jobs in the national economy that Plaintiff could perform within her"

RFC; 2) "the ALJ erred in the persuasiveness afforded to the opinions regarding the Plaintiff's

non-exertional limitations"; and 3) "the ALJ erred in finding that the Plaintiff's testimony was

inconsistent with the evidence in the record."  (Dkt. No. 10, at 6).  In response, the

Commissioner asserts that substantial evidence supports the ALJ's decision.  (Dkt. No. 11).

### B.    Assessing Medical Opinions

Under the new regulations applicable to Plaintiff's claim, the Commissioner will no

longer give specific evidentiary weight to medical opinions.  *Elizabeth P. v. Comm'r of Soc.*

*Sec.*, 20-CV-891, 2022 WL 507367, at *4 (N.D.N.Y. Feb. 18, 2022); *see Wanda N. v. Comm'r*

*of Soc. Sec.*, 21-CV-358, 2022 WL 4376484, at *6 (N.D.N.Y. Sept. 22, 2022).  "Rather, the

Commissioner must consider all medical opinions and 'evaluate their persuasiveness' based on:

supportability; consistency; relationship with the claimant (which includes the length of

treatment relationship, frequency of examinations, purpose and extent of the treatment

relationship, and examining relationship); specialization; and 'other factors.'"  *Elizabeth P.*,

2022 WL 507367, at *4 (quoting 20 C.F.R. § 404.1520c(a)-(c)).

"The regulations explain that when 'evaluat[ing] the persuasiveness of medical opinions

and prior administrative medical findings,' the 'most important factors ... are supportability ...

and consistency.'"  *Loucks v. Kijakazi*, 21-1749, 2022 WL 2189293, at *1 (2d Cir. 2022)

(summary order) (footnote omitted) (quoting 20 C.F.R. § 404.1520c(a)); *see also Raymond M. v.*

*Comm'r of Soc. Sec.*, 19-CV-1313, 2021 WL 706645, at *8 (N.D.N.Y. Feb. 22, 2021) ("At their

8

most basic, the amended regulations require that the ALJ explain her findings regarding the supportability and consistency of each of the medical opinions, 'pointing to specific evidence in the record supporting those findings.'") (citing *Jacqueline L. v. Commissioner*, 19-CV-6786, 2021 WL 243099, at *6 (W.D.N.Y. Jan. 26, 2021)).

"'Supportability' means '[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.'" *Celia A. B. v. Comm'r of Soc. Sec.*, 21-CV-112, 2022 WL 4225540, at *4 (N.D.N.Y. Sept. 13, 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)); *see Andrea G. v. Comm'r of Soc. Sec.*, 20-CV-1253, 2022 WL 204400, at *4 (N.D.N.Y. Jan. 24, 2022) ("Under the supportability factor, the more a medical opinion or prior administrative medical finding is reinforced by 'relevant ... objective medical evidence and supporting explanations,' the 'more persuasive' it will be.") (quoting 20 C.F.R. § 404.1520c(c)(1), and citing *Carmen M. v. Comm'r of the Soc. Sec. Admin*, 20-CV-6532, 2021 WL 5410550, at *4 (W.D.N.Y. Nov. 19, 2021) ("The supportability factor asks how well a medical source supported their opinion(s) with objective medical evidence and supporting explanations.")).

"'Consistency' means '[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.'" *Celia A. B.*, 2022 WL 4225540, at *4 (quoting 20 C.F.R. § 404.1520c(c)(2)).

As Judge Hummel recently explained:

"If the ALJ fails adequately to explain the supportability and consistency factors, or bases [his or] her explanation upon a misreading of the record, remand is required." *Rivera v. Comm'r of the Soc. Sec. Admin*., No. 19-CV-4630 (LJL/BCM), 2020 WL 8167136, at *14 (S.D.N.Y. Dec. 30, 2020), report and recommendation

adopted, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (citation and quotation marks omitted). . . .

"[T]he ALJ's conclusion [need] not perfectly correspond with any of the opinions of medical sources cited in his [or her] decision, [and] he [or she] [i]s entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order).   The Court "defer[s] to the Commissioner's resolution of conflicting evidence[.]" *Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (summary order) (citation and quotation marks omitted).   Therefore, even if a plaintiff disagrees with the ALJ's assessment of opinion evidence and can point to evidence in the record to support his or her position, "whether there is substantial evidence supporting the [plaintiff's] view is not the question [ ]; rather, [the Court] must decide whether substantial evidence supports the ALJ's decision." *Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order) (emphasis omitted). The ALJ must not "ignore evidence or cherry pick only the evidence from medical sources that support a particular pick only the evidence from medical sources that support a particular conclusion and ignore the contrary evidence" but "[t]he Court will not reweigh the evidence that was before the ALJ."   *April B. v. Saul*, No. 8:18-CV-682 (DJS), 2019 WL 4736243, at *6 (N.D.N.Y. Sept. 27, 2019) (citations and internal quotation marks omitted).

"It is well settled that, under both the old and new regulations concerning the evaluation of medical evidence, an ALJ may rely on the opinion of a non-examining state agency consultant in disability claims."   *Amber H. v. Saul*, No. 3:20-CV-490 (ATB), 2021 WL 2076219, at *5 (N.D.N.Y. May 24, 2021).   "[A]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record permits [the reviewing court] to glean the rationale of an ALJ's decision."   *Renalda R. v. Comm'r of Soc. Sec.*, 20-CV-0915 (TWD), 2021 WL 4458821, at *5 (N.D.N.Y. Sept. 29, 2021) (citations and quotation marks omitted).

*Elizabeth P.*, 2022 WL 507367, at *4.   If the RFC assessment conflicts with an opinion from a medical source, "the adjudicator must explain why the opinion was not adopted."   Social Security Ruling 96-8p, at *7 (July 2, 1996).   The failure to do so is grounds for remand.   *See Herrera v. Comm'r of Soc. Sec.*, 20-CV-6211, 2022 WL 4643044, at *7 (E.D.N.Y. Sept. 30, 2022).

### C.      Analysis

#### 1.    Did the ALJ Err in Assessing the Medical Opinions?

##### A.  Dr. Halburian

Consultative examiner Dr. Beth Halburian performed a psychiatric evaluation of Plaintiff and issued a report on October 27, 2017.  R. 530–36.  As relevant here, Dr. Halburian noted that: Plaintiff's thought processes were coherent and goal-directed with no evidence of hallucinations, delusions, or paranoia at the time; 2) she appeared anxious; 3) her attention and concentration appeared to be mildly impaired due to anxiety or nervousness; 4) she was able to successfully complete counting tasks and simple calculations; 5) her recent and remote memory skills appeared mildly impaired due to anxiety or nervousness as well as emotional distress secondary to depression and anxiety; 6) her intellectual functioning appeared average; 7) her general fund of information appeared somewhat limited; and 8) her insight and judgment were good.  R. 533–34.  Dr. Halburian diagnosed Plaintiff with persistent depressive disorder, generalized anxiety disorder with history of panic attacks, and post-traumatic stress disorder.  R. 535.

As to limitations, Dr. Halburian opined that Plaintiff had: 1) no limitation in her ability to understand and carry out simple directions, use reason and judgment to make decisions, and sustain an ordinary routine and regular attendance at work ; 2) mild limitations in her ability to interact adequately with others in the workplace and regulate emotions, control behavior, and maintain well-being; and 3) moderate limitations in her ability to understand and carry out complex instructions, sustain concentration, and perform a task at a consistent pace.  R. 534–35.

The ALJ found that Dr. Halburian's opinion was partially persuasive.  According to the ALJ, Dr. Halburian's opinion that Plaintiff could perform simple but not detailed tasks at a limited pace was "consistent with findings in other records, including descriptions of poor

memory for dates in July 2017 . . . as well as good memory and judgment despite being overwhelmed in October 2020."  R. 19.  But the ALJ found that Dr. Halburian's opinion that Plaintiff had no limitation in decision-making and only mild difficulty interacting with others was inconsistent with psychiatry notes indicating anxiety and irritability.  R. 19.  Thus, the ALJ concluded that "Dr. Halburian's opinion regarding task complexity and work pace is persuasive, but the portions of her opinion regarding interaction and decision-making are not fully persuasive."  R. 19.

Plaintiff argues that Dr. Halburian's opinion is inconsistent with the psychiatry notes, and therefore, "there is not substantial evidence supporting the ALJ's conclusion that this opinion was even 'partially persuasive.'"  (Dkt. No. 10, at 15).  In response, the Commissioner contends that the ALJ properly analyzed the consistency of Dr. Halburian's opinion.  (Dkt. No. 11, at 12–14).

As discussed above, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion will be.  20 C.F.R. § 404.1520c(c)(2).  Plaintiff appears to suggest that because Dr. Halburian's opinion was not entirely consistent with the medical evidence, it should not have been found persuasive at all.  But the ALJ was not required to either adopt or reject Dr. Halburian's opinion *in toto*.  *See Younes v. Colvin*, 14-CV-170, 2015 WL 1524417, at *8 (N.D.N.Y. Apr. 2, 2015) ("There is no absolute bar to crediting only portions of medical source opinions.").

Thus, while the ALJ found one portion of the opinion to be persuasive, he recognized that Dr. Halburian's opinion that Plaintiff had no limitation in decision-making and only mild difficulty interacting with others was inconsistent with psychiatry notes indicating anxiety and

irritability.  R. 19.  The psychiatry notes referenced by the ALJ reflect that in 2020 Plaintiff reported feeling anxious, stressed, irritable, overwhelmed, and she had difficulty sleeping and heard voices.  *See e.g.*, R. 1110, 1112, 1134.  Plaintiff does not indicate how these notes support any greater limitations than those assessed by the ALJ in the RFC.  Based on the Court's review, the psychiatry notes support the ALJ's decision to discount part of Dr. Halburian's opinion. Further, the notes are generally consistent with the RFC, which went beyond Dr. Halburian's opinion and limited Plaintiff to simple work-related decisions, occasional interaction with co-workers and supervisors, and no interaction with the public.  R. 16.  Accordingly, the ALJ did not err in evaluating Dr. Halburian's opinion, and substantial evidence supports the finding that it was partially persuasive.

### B.  Dr. Kleinerman

Dr. Kleinerman, a non-examining State agency psychological consultant, reviewed Plaintiff's medical records and assessed her limitations.  R. 117–19.  Dr. Kleinerman found that Plaintiff was not significantly limited in her ability to: remember locations and work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; sustain an ordinary routine without specific supervision; complete her work without interruptions from psychologically-based symptoms; and maintain socially appropriate behavior.  R. 118–19.  Dr. Kleinerman found that Plaintiff was moderately limited in her ability to: understand, remember, and carry out detailed instructions; work with others without being distracted by them; interact appropriately with the public; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  R. 118–19.

The ALJ found Dr. Kleinerman's opinion to be persuasive because it was "generally supported and consistent with the record as a whole."  R. 20.  The ALJ noted that Dr.

Kleinerman provided a lengthy explanation to support his opinion.  R. 19.  Further, the ALJ stated that Plaintiff's "recent records indicate cooperative and pleasant behavior and good memory despite anxiety and stress, consistent with a capacity to perform simple work and interact with others on an infrequent basis."  R. 19.  But the ALJ noted that Plaintiff's allegations of hallucination "suggest additional limitations in dealing with changes and making decisions beyond what Dr. Kleinerman found."  R. 19–20.

Plaintiff argues that the ALJ improperly relied on Dr. Kleinerman's opinion because it is inconsistent with the record, not based on an examination, and was made before the record was complete.  (Dkt. No. 10, at 15–17).  Therefore, Plaintiff asserts that Dr. Kleinerman's opinion does not amount to substantial evidence and should not have been afforded persuasive value.  In response, the Commissioner contends that the ALJ permissibly relied on Dr. Kleinerman's opinion, which was well-supported by the record.  (Dkt. No. 11, at 15–17).

First, it is well-established that the opinions of non-examining sources may be used to support an ALJ's decision.  *See Allen v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 327, 335 (W.D.N.Y. 2018) (citing cases).  The fact that Dr. Kleinerman did not examine Plaintiff did not preclude the ALJ from relying upon his opinion.  Indeed, where the record does not contain a medical opinion from a treating source, as is the case here, the opinion of a non-examining source can "take on particular significance."  *Kya M. v. Comm'r of Soc. Sec.*, 506 F. Supp. 3d 159, 165 (W.D.N.Y. 2020) (citation omitted).

Second, although the ALJ stated that Dr. Kleinerman's opinion about Plaintiff's limitations was inconsistent with her allegations of hallucinations, that did not preclude the ALJ from finding that the opinion was consistent with the record "as a whole."  R. 20.  As the Commissioner points out, there was ample evidence consistent with Dr. Kleinerman's opinion,

including treatment notes, mental exam findings, and Plaintiff's daily activities.  (*See* Dkt. No. 11, at 14–15).

Third, "it is not error to rely on an opinion that predates additional medical evidence if that evidence does not indicate any material change in the claimant's medical condition or the severity of his symptoms."  *See, e.g.*, *Robert J. R. v. Comm'r of Soc. Sec.*, 19-CV-627, 2021 WL 4437174, at *4 (W.D.N.Y. Sept. 28, 2021).  Plaintiff asserts that Dr. Kleinerman's opinion, dated October 2017, should not have been found persuasive because he did not review treatment notes from 2020 where Plaintiff reported hallucinations.  (Dkt. No. 10, at 17).  But the ALJ recognized Plaintiff's reported hallucinations "suggest additional limitations in dealing with changes and making decisions beyond what Dr. Kleinerman found," (R. 19–20), and the ALJ incorporated related limitations into the RFC.  In sum, the Court finds that the ALJ did not err in evaluating and relying upon Dr. Kleinerman's opinion, and any possible error was harmless because it would not have affected the ALJ's decision.

### 2.   Did the ALJ Err in Evaluating Plaintiff's Testimony?

The Regulations require a two-step process for the ALJ to assess a claimant's subjective symptoms.  First, the ALJ considers whether the medical evidence shows any impairment "which could reasonably be expected to produce the pain or other symptoms alleged. . . ."  20 C.F.R. § 404.1529(a).  Second, if an impairment is shown, the ALJ must review all the available evidence and evaluate the "intensity, persistence, or functionally limiting effects" of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work.  20 C.F.R. §§ 404.1529(b)–(c).  Here, Plaintiff argues that the ALJ erred at step two by finding that Plaintiff's alleged symptoms were inconsistent with the record evidence.  (Dkt. No. 10, at 17).

In response, the Commissioner contends that substantial evidence supports the ALJ's finding. (Dkt. No. 11, at 17).

As relevant here, the ALJ found that Plaintiff's medical conditions could be reasonably expected to cause her alleged mental health symptoms, but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  R. 16.

First, Plaintiff argues that the ALJ did only a conclusory analysis of her alleged symptoms.  (Dkt. No. 10, at 18).  Plaintiff compares the ALJ's analysis to that found wanting in *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 236 (E.D.N.Y. 2014).  However, the ALJ in this case did not employ the boilerplate formulation used in *Cabibi*.  Rather, the record shows that the ALJ closely followed the regulatory framework and conducted a thorough analysis.[1]  As required by 20 C.F.R. § 404.1529(c)(2), the ALJ began by reviewing the objective medical evidence, some of which tended to support Plaintiff's alleged symptoms: 1) chronic symptoms of mental disorders, including hallucinations, preoccupation, and flashbacks; 2) repeated findings of mood abnormality, including dysphoric mood, irritability, anxiety, and depression; 3) some cognitive issues associated with mental impairments; 4) and findings of fair attention and concentration. R. 17–18.  Then the ALJ noted objective medical evidence which indicated that Plaintiff's abilities exceeded her alleged symptoms, including that: 1) "most medical records suggest good mental functioning"; 2) "numerous telehealth records from 2020 indicate good recent and remote memory, as well as good insight and judgment"; 3) generally mild findings made by Dr.

---

[1] The Court notes that contrary to Plaintiff's suggestion, the ALJ did not make a "credibility" finding, as the SSA no longer uses that term.  *See* Social Security Ruling 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims (effective March 16, 2016).

Halburian; and 4) psychiatric records indicating that Plaintiff was calm and cooperative.  R. 18.
The ALJ stated that:

> Because the claimant has a history of panic attacks and alleged hallucination related
> to her mental disorders, but most mental examinations indicate cooperative
> behavior and intact cognition and judgment, the undersigned finds these allegations
> partially supported.  The claimant's panic attacks in crowds would preclude any
> work requiring interaction with the public, but her generally cooperative and
> engaging behavior when in treatment show she can have occasional interactions
> with coworkers and supervisors.  The evidence does indicate some findings of
> diminished memory and concentration, as well as hallucination symptoms affecting
> her ability to make decisions and respond to changes, but the overall record
> indicates an ability to follow simple instructions for repetitive tasks not at a
> production pace.

R. 18.

As required by 20 C.F.R. § 404.1529(c)(3), the ALJ then analyzed the non-medical

evidence supporting Plaintiff's alleged mental health symptoms.  Among other things, the ALJ

noted that Plaintiff "has demonstrated a good response to her symptoms, including insomnia and

hallucinations, when taking medication consistently."  R. 19.  The ALJ also found that Plaintiff's

allegations of disabling mental health symptoms were inconsistent with her reported daily

activities, which included shopping in stores, leaving the house, household cleaning and laundry,

and paying her bills.  R. 19.  The ALJ also noted that Plaintiff had performed some work activity

in 2018 and 2019, which suggested that her mental disorders were "less limiting than alleged."

R. 19.  Overall, the ALJ found that "considering the examination findings, the claimant's

treatment history, and her activities of daily living, the undersigned finds that these allegations

are not fully supported by the record as a whole."  R. 19.  In sum, the ALJ sufficiently explained

his analysis of Plaintiff's alleged symptoms and cited substantial evidence in evaluating them.

Next, Plaintiff argues that the ALJ "mischaracterized and overstated the daily activities

the Plaintiff does perform, while also failing to articulate how the Plaintiff's statements

regarding daily activities are inconsistent with the medical record demonstrating severe mental impairments." (Dkt. No. 10, at 19). Notably, Plaintiff does not specifically identify any instance where the ALJ overstated her daily activities. As to consistency, it is well-established that basic activities of self-care "do not by themselves contradict allegations of disability, as people should not be penalized for enduring the pain of their disability in order to care for themselves." *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000). However, in this case the ALJ cited Plaintiff's daily activities *as part* of a multifaceted analysis of her alleged symptoms, which included the objective medical evidence discussed above. And the ALJ relied upon all of the cited evidence in finding that Plaintiff's alleged symptoms were inconsistent with the record.

Plaintiff also argues that the ALJ "failed to explain how Plaintiff's activities of daily living translate into her ability to perform substantial gainful activity." (Dkt. No. 10, at 20). According to Plaintiff, the ALJ therefore erred in relying on Plaintiff's activities of daily living to determine her limitations and RFC. (*Id.*). But the ALJ's analysis shows that he considered Plaintiff's daily activities primarily to assess her alleged symptoms, not her limitations and RFC. For example, the ALJ cited statements that Plaintiff performed household chores as evidence contrary to her allegations of incapacitating depression. R. 19. Such daily activities "are fair game when assessing the intensity and persistence of a plaintiff's symptoms." *Julie B. v. Comm'r of Soc. Sec.*, 578 F. Supp. 3d 345, 354 (N.D.N.Y. 2022). Thus, the ALJ properly considered Plaintiff's daily activities pursuant to 20 C.F.R. § 404.1529(c), and he was not obligated to explain how they translated into her ability to do work. In sum, the Court finds no error in the ALJ's reliance on Plaintiff's daily activities.

Further, Plaintiff contends that the ALJ "failed to consider the seven credibility factors pursuant to 20 C.F.R. § 416.929(c)(3)(i)–(vii), which also represents a flaw in the credibility

determination." (Dkt. No. 10, at 21). In addition to objective medical evidence, the Regulations identify the following factors relevant as relevant to evaluating a claimant's symptoms:

> (i) Your daily activities;
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 416.929(c)(3)(i)–(vii).

As discussed above, the ALJ permissibly considered Plaintiff's daily activities. The ALJ also noted that Plaintiff received mental health treatment and that recent records indicated no side effects from medication. R. 18. And the ALJ noted Plaintiff's history of assault and limited employment. R. 19. Therefore, the ALJ addressed at least several of the 20 C.F.R. § 416.929(c)(3) factors, and a "rote recitation" of each factor is not generally necessary. *Bonilla v. Comm'r of Soc. Sec.*, 20-CV-655, 2022 WL 204215, at *9 (E.D.N.Y. Jan. 21, 2022). Moreover, as discussed above, the ALJ cited substantial evidence in evaluating Plaintiff's symptoms, and any error in failing to explicitly address some of the Section 416.929(c)(3) factors was harmless.

**3. Is the ALJ's Step Five Determination Supported by Substantial Evidence?**

Finally, Plaintiff argues that the Commissioner failed to meet its burden at step five of the disability determination process because the ALJ relied on unreliable testimony from a vocational expert ("VE"). (Dkt. No. 10, at 10–14). According to Plaintiff, "[n]o reasonable mind would accept the VE's testimony as adequate to support the conclusion that there are a

significant amount of jobs in the national economy that the Plaintiff can perform." (*Id.*, at 13).
Thus, Plaintiff asserts that substantial evidence does not support the step five determination.
(*Id.*, at 14).  The Commissioner disagrees.  (Dkt. No. 11, at 5–10).

At the hearing, the ALJ asked the VE whether jobs exist in the national economy for an
individual with Plaintiff's age, education, work experience, and RFC.  R. 96.  The VE testified
that someone in Plaintiff's position would be able to perform the requirements of representative
occupations such as: 1) linen room attendant (70,000 jobs nationally); 2) cleaner II (150,000 jobs
nationally); and 3) laundry worker I (35,000 jobs nationally).  R. 97.  The VE testified that his
opinion was consistent with the Dictionary of Occupational Titles ("DOT") and based on his
professional experience and training.  R. 98–99.

Plaintiff's attorney at the hearing questioned the VE about the basis for his opinion.  The
VE testified that he calculated the number of jobs available by using the OccuBrowse software,
which has statistics from the Department of Labor correlated to DOT job codes.  R. 100.  The
VE further testified that, for each DOT code, he took out the jobs that did not relate to the
hypothetical RFC.  R. 102.  The VE testified that he also checks labor market trends and Bureau
of Labor Statistics numbers, and also that he consults with experts from the Department of
Labor.  R. 105.  The VE admitted that he is not a statistician or an "expert on the exact number
of jobs within the national economy."  R. 104.  Plaintiff's attorney insisted that the VE's analysis
was flawed, offered alternative numbers generated by a different software, and was permitted to
file a post-hearing brief.  R. 103–107.

The ALJ ultimately rejected Plaintiff's challenge to the VE's opinion.  The ALJ noted
that the VE's methodology included "screening out other DOT codes contained within the SOC
group and using his experience, including a history of labor market surveys and trends, to obtain

20

a more 'reasonable' number of jobs." R. 22. The ALJ determined that the VE's testimony was consistent with DOT information, and that where the DOT was silent, the VE "has sufficient education and experience in job classification and placement to justify those aspects of his testimony." R. 23. The ALJ noted that the VE had "over twenty years of experience performing vocational rehabilitation tasks such as vocational evaluation and job placement." R. 23. The ALJ also recognized that there was a discrepancy in the job numbers generated by Plaintiff's attorney using different software, which totaled 13,500, but found that this discrepancy did not fatally undermine the VE's opinion. R. 22–23. The ALJ also found that the 13,500 jobs would still amount to a significant number in the national economy. R. 22.

Plaintiff now once again argues that the VE's testimony was flawed. According to Plaintiff, the VE's job numbers "lack any reliability in this case." (Dkt. No. 10, at 11). In general, although the Federal Rules of Evidence do not apply in Social Security proceedings, an ALJ may only rely on a VE's opinion where it rests on a sufficient foundation, such as "personal experience, labor market surveys, and published statistical sources." *See Jones-Reid v. Astrue*, 934 F. Supp. 2d 381, 407 (D. Conn. 2012), *aff'd*, 515 F. App'x 32 (2d Cir. 2013) (summary order). The Supreme Court has explained that whether a VE's opinion amounts to substantial evidence must be determined on a case-by-case basis, and that opinions clearing that bar must typically have some "markers of reliability." *Biestek*, 139 S.Ct. at 1157.

In this case, the Court finds that the VE's opinion amounts to substantial evidence for the ALJ's Step Five Determination. Notably, the VE testified that he based his opinion on personal knowledge, experience, and statistical sources. The VE generally explained his methodology in that he obtained a set of job numbers based on DOT codes from the OccuBrowse software and then whittled those numbers down to reflect Plaintiff's RFC based on his experience and

knowledge of labor market trends.  Thus, the VE's opinion had sufficient markers of reliability for the ALJ to rely upon it.[2]  *See also Jones-Reid*, 934 F. Supp. 2d at 407 (finding that the ALJ did not err in relying upon VE testimony based on "reliable statistical sources as well personal knowledge and experience").

To the extent Plaintiff points to lower job numbers calculated by different software, such a discrepancy would not render the VE's opinion invalid.  Moreover, the lower jobs cited by Plaintiff would not have affected the ALJ's decision.  Courts have held that a 'significant number' of jobs is fairly minimal."  *Hamilton v. Comm'r of Soc. Sec.*, 105 F. Supp. 3d 223, 229 (N.D.N.Y. 2015) (citation omitted).  Thus, the 13,500 jobs identified by Plaintiff would still constitute a significant number.[3]  *See Rosa v. Comm'r of Soc. Sec.*, 14-CV-1145, 2015 WL 7574516, at *7 (N.D.N.Y. Nov. 4, 2015) (finding that 11,903 jobs would constitute a significant number, observing that "[c]ourts have held that numbers varying from 9,000 upwards constituted 'significant'"), *report and recommendation adopted sub nom. Rosa v. Colvin*, 2015 WL 7573222 (N.D.N.Y. Nov. 25, 2015).

## VI.   CONCLUSION

Although Plaintiff suffers from several serious ailments, it is not for the Court to overturn the ALJ's decision if that decision is supported by substantial evidence.  After careful review of the record, the Court concludes that the ALJ applied the correct legal standards, and the decision is supported by substantial evidence.

---

[2] To the extent the vocational expert testified that he was not a trained statistician, that fact does not compromise the general reliability of his opinion.  As discussed above, there is no requirement that a vocational expert be an "expert" as that term is used in Rule 702 of the Federal Rules of Evidence.

[3] Plaintiff objects that the ALJ did not resolve the discrepancy between the job numbers cited by her attorney and the VE.  (Dkt. No. 10, at 13).  However, the ALJ's decision shows that he relied on the job numbers from the VE, whose opinion he gave great weight.  R. 23.

For the foregoing reasons it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is

**DENIED** and Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**.

The decision of the Commissioner is **AFFIRMED**.

**IT IS SO ORDERED.**

Dated: June 27, 2023

Thomas J. McAvoy
Senior, U.S. District Judge